UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

INTERNATIONAL ASSOCIATION OF SHEET
METAL, AIR, RAIL & TRANSPORTATION
WORKERS, LOCAL UNION NO. 71; and
JOHN HELAK, MICHAEL EMILIANI, KENNETH
JABLONSKI, PAUL CRIST, RICHARD WAGNER,
ANDREW NOWAK, JEFFREY MERTZ and ROBERT
BECK, as Trustees of the Sheet Metal Workers Local
Union No. 71 Health and Welfare Trust Fund, the Sheet
Metal Workers Local Union No. 71 Pension Fund and the
Sheet Metal Workers Local Union No. 71 Annuity Fund;
and, JOHN HELAK, BRIAN HANDZLIK, EDWARD
BENDER, JR., PAUL CRIST, MICHAEL KONITZER,
ANDREW NOWAK, JEFFREY MERTZ and DAVID
NIEMAN, as Trustees of the Sheet Metal Contractors and
Local No. 71 J.A.C. Education and Training Fund
                                      Plaintiffs,
v.

CUDNEY & CO., LLC,
                                Defendant.
_____

**DECISION AND ORDER**[1]

17-CV-816

Before me is plaintiffs' motion for summary judgment [21].[2] For the following reasons, plaintiffs' motion for summary judgment is granted in part, and denied in part.

## BACKGROUND

In this action brought pursuant to §§502(a)(3) and 515 of the Employee Retirement Income Security Act ("ERISA") [29 U.S.C. §§1132(a)(3) and 1145] and §301 of the Labor-Management Relations Act of 1947 ("LMRA") [29 U.S.C. §185], plaintiffs allege that

---

[1]    The parties consented to my jurisdiction pursuant to 28 U.S.C. §636(c) [13].

[2]    Bracketed references are to the CM/ECF docket entries. Unless otherwise indicated, page references are to numbers reflected on the documents themselves rather than to the CM/ECF pagination.

defendant Cudney & Co., LLC breached a collective bargaining agreement executed on April 29, 2016 (the "CBA") by failing to make contributions in the amount of $32,732.93 to the pension fund, health fund, annuity fund, and training fund, as required for the period of March 26, 2017 through May 20, 2017. Complaint [1], ¶¶ 19-21, 28-32. Plaintiffs assert that they are also entitled to interest on the unpaid contributions (id., ¶¶33b and c)[3], liquidated damages in the amount of $3,273.30 (id., ¶33d), delinquent employee withholdings in the amount of $7,289.28 (id., ¶39a), as well as attorneys' fees and costs. Id., ¶¶33e, 39b.

The defendant has filed a counterclaim alleging that under the terms of the CBA it was entitled to "market recovery funds" from the International Association of Sheet Metal, Air, Rail & Transportation Workers, Local Union No. 71 ("the Union"). Answer with Counterclaim [19], ¶¶16-29. Pursuant to what is referred to as "Resolution 78" ([21-3], p. 44 of 125), the Labor Management Cooperation Fund ("LMCF") was created and funded by contributions from union members to increase employment opportunities ([21-3], p. 64 of 125) by relaxing the terms of the CBA in predominantly non-union construction markets. [21-1], p. 6 of 14.[4] Defendant contends that it performed covered work using the Union's labor between March 26, 2017 and May 20, 2017, and thus is entitled to $15,130.00 of market recovery funds [19], ¶¶23-28.

In this summary judgment motion, plaintiffs seek (1) an order declaring that defendant is liable to plaintiffs for delinquent contributions, interest, liquidated damages and attorneys' fees and costs; (2) an order dismissing defendant's counterclaim; (3) judgment against defendant in the amount of $61,186.65, plus post-judgment interest. [21-1], p.4 of 14.

---

[3] Plaintiffs calculate the interest due to be $3,984.89 as of the date of the motion for summary judgment [21].

[4] The payments from the LMCF to participating employers are referred to by the parties interchangeably as "market recovery funds" or "Resolution 78 funds".

A.     **Plaintiffs' Claim for Contributions, Interest, Damages, and Fees**

Defendant does not dispute that it failed to remit contributions for work performed by its employees covered by the CBA for the period of March 26, 2017 through May 20, 2070, totaling $32,732.93. Response to Plaintiff's Statement of Material Facts [23-1], ¶ 13. Nor does it dispute that it failed to remit employee withholdings in the amount of $7,289.28 (id., ¶14), or that the CBA provides that plaintiffs are entitled to interest, liquidated damages, and attorneys' fees due to a failure to timely remit contributions. Id., ¶¶17-19. In fact, defendant admits that it became delinquent with respect to the CBA contributions on March 26, 2017. Defendant's Memorandum of Law [23], p.5. Notwithstanding that delinquency, defendant contends that it continued to be entitled to "market recovery funds", and that it sent the Union an invoice for such funds in the amount of $15,130.00 on July 5, 2017. Id. In opposition to plaintiffs' motion, defendant asserts that it is entitled to an offset with respect to any award for unpaid contributions. Id., p. 7.

Defendant provides no authority for the proposition that it would be entitled to an offset if it were to prevail on the counterclaim. To the contrary, in Lewis v. Benedict Coal Corp., 361 U.S. 459, 471 (1960), the Supreme Court held that an employer could not raise the union's breach of the collective bargaining agreement as a defense against an employee benefit plan suing for delinquent contributions unless the collective bargaining agreement expressly preserved such a defense in "unequivocal words". Id. at 470-71.

"[I]n the wake of Benedict Coal, some employers seeking to escape their contribution obligations adopted a new strategy. Instead of arguing that the union had breached the collective bargaining agreement, they raised defenses going to the formation of the collective bargaining agreement such as fraud in the inducement." Benson v. Brower's Moving & Storage,

Inc., 907 F.2d 310, 313–14 (2d Cir. 1990). Congress responded to these attempts by adding §515 to ERISA to "permit trustees of plans to recover delinquent contributions efficaciously, and without regard to issues which might arise under labor-management relations law - other than 29 U.S.C. 186." Id. Thus, courts "have unanimously regarded [§515] as a limitation on the defenses available to an employer when sued by an employee benefit plan. For example, an employer may not assert that the union orally agreed not to enforce the terms of the collective bargaining agreement . . . that the employer was fraudulently induced to enter into the agreement . . . or that no contract was formed because of unilateral or mutual mistake of fact. Id. The Second Circuit identified only two defenses recognized by the courts: "(1) that the pension contributions themselves are illegal, . . . and (2) that the collective bargaining agreement is void (not merely voidable)". Id. Thus, "once an employer knowingly signs an agreement that requires him to contribute to an employee benefit plan, he may not escape his obligation by raising defenses that call into question the union's ability to enforce the contract as a whole". Id.

In sum, defendant has not raised any question of fact as to whether it is obligated to pay the delinquent contributions, interest, liquidated damages, attorneys' fees and costs sought by plaintiffs. In light of Benedict Coal and its progeny, defendant has also failed to articulate any legal defense to plaintiffs' claim, or any entitlement to an offset should it prevail on the counterclaim.

Plaintiffs' motion for summary judgment is granted to the extent that it seeks declaration of defendant's liability to plaintiffs for the delinquent contributions, interest, liquidated damages, attorneys' fees and costs associated with bringing this action, and the entry of a judgment against defendant in the amount of $61,186.65.

### B. Defendants' Counterclaim for Market Recovery Funds

Plaintiffs also seek summary judgment with respect to defendant's counterclaim that it is entitled to additional market recovery funds. Defendant's counterclaim is based upon Addendum Five of the CBA which reads, *in its entirety*: "Resolution 78: The Union agrees to provide Resolution 78 relief for light commercial work that is dominated by non-union contractors." [21-3], p. 38 of 125.

The language of the contract does not provide any limitations or qualifications regarding the extent of the parties' obligations with respect to the Resolution 78 relief to be provided pursuant to Addendum Five. Both parties cite an email dated April 22, 2016 (seven days prior to the execution of the CBA) from John Helak, business manager for both the Union and the LMCF, to Edward Cudney, defendant's principal [21-3], p. 71 of 125. In that email, Mr. Helak states that as "a starting point for our first residential contractor", the Union was "willing to offer market recovery funds relief of $10.00/hour for all journeyman hours worked in the first six months of business operation (up to six journeymen). Id. In addition, the Union offered the same relief for "classified worker (new member) for the first two months of employment". Id. Mr. Helak stated that "[t]his offer is guaranteed for up to 6 new members, with the ability of the contractor to request the same relief in the event the workflow can support the additional members, and would only be denied by *the Union* in the event of unfavorable structure within the market recovery fund". Id. (emphasis added). The Union also agreed to waive the requirement for upfront bonding, but reserved "the right to insist [on bonding] in the event of contractor delinquency of more than one month during the first year after the signing of the agreement". Id.

Plaintiffs assert that defendant is not entitled to any further market recovery funds because: (1) the award of funds under the Resolution 78 program is subject to the "sole discretion" of the LMCF business manager; (2) defendant had already received more than $100,000.00 from the program; and (3) participation in the program was contingent upon defendant's compliance with the terms of the CBA. [21-1], p. 7 of 14.

I am not persuaded that the counterclaim must fail as a matter of law merely because the Resolution 78 policy guidelines provide that the LMCF business manager has sole discretion to provide funding, or that participation was contingent upon defendant's compliance with the CBA. Neither of these conditions was included in the Addendum Five language, the contract between the Union and defendant upon which the counterclaim is based. The LMCF is not a signatory to the CBA. The CBA does not reference or incorporate any of the LMCF terms or documents which give discretion to the business manager. Indeed, defendant asserts that it was never provided with the LMCF policy and guideline documentation. [23], p. 6. Instead, as quoted above, the language of the CBA simply stated, without qualification, that *the Union* agreed to provide unspecified Resolution 78 relief to defendant. [21-3], p. 38 of 125. The parties' intentions as to the scope of the relief to be provided, or the conditions attendant thereto, are not reflected in the language of the contract.

While the April 22, 2016 email may provide some insight as to the intentions of the parties, that document suggests that it is only a "starting point" and contains the possibility of open-ended relief "in the event the workload can support the additional members". [21-3], p. 71 of 125. Instead of stating that the entitlement to market recovery funds was based upon compliance with the CBA, Mr. Helak's email states only that the Union reserved the right to insist upon upfront bonding in the event that the defendant was delinquent for more than one month during the first year of the contract. Id. At the very least, questions of fact exist as to the

whether or not the intent of the parties, when executing the CBA including Addendum Five, was to adopt the LMCF policies and guidelines to give the Union unfettered discretion over the provision of Resolution 78 relief, and whether entitlement to market recovery funds was contingent on compliance with the CBA. These questions of fact preclude the entry of summary judgment as to the counterclaim.

Plaintiffs also argue that the counterclaim must be dismissed because the Union allegedly offered a maximum of $100,000.00 of Resolution 78 relief and defendant has already received $101,280.00 in relief funds. [21-1], p. 7 of 14. In this regard, Mr. Helak states that he and defendant "discussed" an offer with a maximum of $100,000.00 in Resolution 78 relief funds. Affidavit of John Helak [21-3], p. 78 of 125. However, Mr. Cudney testifies that he "was never informed that the market relief credits would be capped at $100,000.00". Affidavit of Edward Cudney, [23-2], p. 5 of 6. The plaintiffs have presented no documentation establishing the $100,000.00 limit, and the contradicting testimony of Mr. Helak and Mr. Cudney on this issue also creates a question of fact precluding summary judgment.

Finally, notwithstanding that the LMCF is not a signator to the CBA and is not mentioned in Addendum Five or the April 22, 2016 email, plaintiffs assert that the counterclaim must also be dismissed because defendant failed to join the LMCF as a necessary party. [21-1], p. 12 of 14. Plaintiffs present no authority to establish that the LMCF is a necessary party under these circumstances. Plaintiffs argue that the use of the phrase "market recovery funds" in the April 22, 2016 email put defendant "on notice of the existence of the market recovery fund, a necessary party" to the counterclaim. Plaintiffs' Reply [24], p. 6 of 8. However, the use of the words "market recovery funds", does not adequately convey that the phrase is a reference to an entity separate from the Union, such that defendant would be on notice that it would be necessary to name the LMCF to enforce a contractual obligation made by the Union.

Defendant does not take a position as to whether or not the LMCF is a required party, but instead simply states that if the LMCF is a required party it could be joined by court order under Rule 19 of the Federal Rules of Civil Procedure. [23], p. 8. Rule 19 provides that a party is considered a "required" party, among other things, if "in that person's absence, the court cannot accord complete relief among existing parties". Here, Addendum Five of the CBA obligates the Union (not the LMCF) to provide Resolution 78 relief to defendant. The plaintiffs have not demonstrated that, should defendant prevail on its counterclaim by proving that the Union failed to meet its obligations as agreed to in the CBA, the entry of a money judgment against the Union to compensate defendant for such damages would not render complete relief among the existing parties. Under such circumstances, the LMCF is not a required party to this litigation.

Because questions of fact exist as to the merits of defendant's counterclaim, plaintiffs' motion for summary judgment with respect to defendant's counterclaim is denied.

## CONCLUSION

For the reasons stated above, plaintiffs' motion for summary judgment is granted to the extent that plaintiffs seek a declaration and judgment finding defendant liable for delinquent contributions, interest, liquidated damages, attorneys fees and costs in the amount of $61,186.65 (plus post-judgment interest), and is otherwise denied.

SO ORDERED.

Dated: July 5, 2018

/s/ Jeremiah J. McCarthy
JEREMIAH J. MCCARTHY
United States Magistrate Judge